# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ALICE HAGGARD and DONETTE L. HAGGARD**, Special Administrator of the Estate of Sylvester Haggard, deceased,

        Plaintiffs,

v.                                     Case No. 03-C-356

**ANGELA L. BUHALOG and NICOLE BARTLETT,**

        Defendants.

# DECISION AND ORDER

The plaintiff in this action, who is the Special Administrator of the Estate of Sylvester Haggard (the "Plaintiff"), filed a complaint alleging that the defendants, Angela L. Buhalog ("Buhalog") and Nicole Bartlett ("Bartlett"), are liable for a violation of 42 U.S.C. § 1983 and for medical malpractice. Buhalog and Bartlett filed a motion for summary judgment, which is now pending before this Court.

## BACKGROUND

Sylvester Haggard died on June 14, 2002, of a heart attack while incarcerated at the Dodge County Correctional Facility ("Dodge"). Before he began serving his sentence at Dodge, Haggard received a medical screening on March 15, 2002. (Defendant's Proposed

Findings of Fact "DPFOF" ¶ 2.) Haggard expressed no complaints or concerns regarding his physical health and his vital signs were normal. (*Id.*) At a subsequent screening on March 20, 2002, Haggard also denied any history of heart disease and made no mention of any cardiac condition. (*Id.*)

On April 10, 2002, Haggard received a physical examination. (*Id.* at ¶ 3.) Haggard said that he received a rib fracture in 2000 and complained that he experienced pain when he climbed into his top bunk. (*Id.*) He also related that he had suffered mild chest pain on exertion and shortness of breath the past two years, and that he smoked cigarettes for the previous 40 years. (*Id.*) His blood pressure was within a normal range at the time. (*Id.*) The Physician Assistant who examined Haggard advised him to lose some weight and scheduled a doctor's visit and an electrocardiogram (EKG). (*Id.*) On April 22, 2002, a physician at Dodge, Dr. Hoftiezer, examined Haggard and concluded that Haggard's symptoms were probably "gastrointestinal related," and ordered medical staff to treat any recurrences with antacids. (Plaintiff's Proposed Findings of Fact "PPFOF" ¶ 7.)

On May 4, 2002, Haggard underwent an EKG. (DPFOF ¶ 5.) The result was normal. (*Id.*) On May 7, 2002, Haggard had another medical screening. Haggard again denied suffering from any heart problems and confirmed that he was not under a doctor's care for any medical problems. (*Id.*)

On June 14, 2002, after eating breakfast, Haggard thought he was suffering from indigestion, so he took a dose of Rolaids and laid down to rest in his jail cell. (*Id.*) At 9:25

2

a.m., Haggard went to the Dodge medical unit. (*Id.* at ¶ 7.) Buhalog, who was a nurse working at the medical unit at the time, examined Haggard. (*Id.*) Haggard informed Buhalog that he had a "pain feeling in [his] chest," and pointed to the middle of his chest. (*Id.*) Haggard also explained that the pain he was suffering often occurred after his meals, but that the Tums he took the day before did not bring any relief. (*Id.*) Haggard's blood pressure and pulse were normal, and he denied suffering any radiating pain. (*Id.* at ¶ 8.)

Buhalog reviewed Haggard's medical chart and learned that he had no history of heart problems. (*Id.* at ¶ 9.) She also read Dr. Hoftiezer's opinion that Haggard's symptoms were probably gastrointestinal related and his order that further recurrences ought to be treated with antacids. (*Id.* at ¶ 9.) Buhalog gave Haggard Pepcid AC, which is an over-the-counter medication to relieve heartburn. (PPFOF ¶ 28.) Buhalog also instructed Haggard to notify the staff if his condition changed. (DPFOF ¶ 10.)

Later that morning, at 11:55 a.m., Haggard again complained of indigestion and heartburn. (*Id.* at ¶ 12.) Buhalog went to Haggard's cell to examine him again. (*Id.*) Haggard described his symptoms as gastrointestinal related and he complained of "severe indigestion." (*Id.*) He told Buhalog this was part of a recurring problem, but that usually his heartburn was not "this bad." (*Id.*) He also told her that he had vomited. (*Id.*) Buhalog took his blood pressure, which was 146/92. (*Id.* at ¶ 13.)

Buhalog believed that Haggard was suffering from severe indigestion, and she decided to move him to a medical cell to monitor him. (*Id.*) She also gave him liquid antacids.

3

(PPFOF ¶ 37.) Ten minutes later, at 12:05 p.m., Haggard drank two glasses of water, and was trying to burp and vomit, and stated, "I think I have to throw up. I can feel it but it won't come up." (DPFOF ¶ 16.)

Buhalog's shift ended at 1:00 p.m., at which time Bartlett took over the care of Haggard. (*Id*. at ¶ 17.) Shortly thereafter, a correctional officer asked Haggard how he was feeling, and Haggard responded that he felt "okay." (*Id*.) At 1:36 p.m., Officer Kevin Kluck checked Haggard's room. (*Id*. at ¶ 18.) Kluck said that Haggard was lying on his back and he appeared to be sleeping. (*Id*.) At approximately 2:30 p.m., Haggard died of a heart attack. (Bartlett Dep., p. 31.)

Haggard's estate sued Buhalog and Bartlett claiming that they were deliberately indifferent to Haggard's serious medical condition, in violation of 42 U.S.C. § 1983, and that they committed medical malpractice. Buhalog and Bartlett filed a motion for summary judgment, seeking to dismiss both claims against Bartlett, and to dismiss the § 1983 claim against Buhalog. In response, the Plaintiff stipulated that it could not prove its case against Bartlett. The only question, therefore, is whether summary judgment is appropriate for the § 1983 claim against Buhalog.

**STANDARD OF REVIEW**

A court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

4

Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A "material fact" is one which, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Hall v. Bennett*, 379 F.3d 462, 465 (7th Cir. 2004). If the movant meets his burden (by showing an absence of a genuine issue of material fact), the nonmovant may not rest on the pleadings. Instead, the nonmovant must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict on every issue for which he bears the burden of proof at trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *Celotex Corp.*, 477 U.S. at 322-24. If the nonmoving party bears the burden of proof on a matter at trial, and he is unable "to establish the existence of an element essential to [his] case," summary judgment is appropriate. *Celotex*, 477 U.S. at 322-23.

5

**DISCUSSION**

The Eighth Amendment prohibition against cruel and unusual punishment includes instances where prison officials are deliberately indifferent to a serious medical condition of an inmate. *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001). A difference of opinion as to how a detainee ought to have been treated does not give rise to a constitutional violation. *See Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). Nor does mere negligence constitute deliberate indifference. *Farmer v. Brennan* 511 U.S. 825, 835 (1994). Rather, a plaintiff must show that (1) the defendant knew of the plaintiff's serious medical condition, and (2) that the defendant was deliberately indifferent to it. *See Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1994).

There is no dispute that Buhalog was, at the relevant time, ignorant of Haggard's serious medical condition. She believed, albeit erroneously, that Haggard's condition was related to indigestion rather than to a heart problem. Thus, she could not be deliberately indifferent to Haggard's serious medical condition if she did not even know that Haggard was suffering a serious medical condition. *See id*. at 178.

However, that does not end the inquiry. A defendant's ignorance of an inmate's serious medical condition can be also be an instance of deliberate indifference if the defendant's medical judgment is a "substantial departure" from the accepted standard of care. *Fromm*, 94 F.3d at 261-62. In other words, the inmate's symptoms must be consistent only with the serious medical condition, and with no other less serious condition. *See Steele*, 82

F.3d at 179. In the instant action, the Plaintiff argues that Buhalog's decision to treat Haggard as having indigestion problems, instead of cardiac problems, was such a substantial departure from sound, medical judgment, that a fact finder could infer that she was deliberately indifferent to Haggard's medical condition. In support of its argument, the Plaintiff presents the expert testimony of Dr. Francis G. Wolf, M.D., who believes that, given the symptoms that Haggard exhibited, Buhalog acted below the standard of care when she continued to treat him as having indigestion problems.

However, Dr. Wolf also stated that the symptoms of a heart attack and indigestion are frequently "difficult to differentiate" and that the symptoms of acid reflux can "mimic the symptoms of a heart attack." (DPFOF ¶ 21.) Furthermore, several of Buhalog's experts agreed that the signs and symptoms typically associated with heart attacks were absent from Haggard's presentation. Haggard was not sweating, he was not experiencing radiating pain, he was always ambulatory, and he was not having trouble breathing. (Barth Aff. ¶ 6; Bohlmann Aff. ¶ 8; Wade Aff. ¶ 8.) Thus, because Haggard's symptoms were consistent with indigestion, and not just a heart attack, Buhalog's misdiagnosis was not a "substantial departure" from sound, medical judgment. Accordingly, summary judgment must be granted dismissing the Plaintiff's § 1983 claim against Buhalog.

7

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The Defendants' Motion for Summary Judgment (Docket No. 42) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 21st day of August, 2006.

        **BY THE COURT**

        s/ Rudolph T. Randa
        **Hon. Rudolph T. Randa**
        **Chief Judge**